# IN THE UNITED STATES DISTRICT COURT FOR THE
# SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| v. | ) | CRIMINAL NO. |
| | ) | 03-00241-CB |
| CARL BROCK, | ) | CIVIL NO. |
| | ) | 13-00026-CB |
| Petitioner/Defendant | ) | |

## ORDER

This matter is before the Court on a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 filed by Carl Brock, a person in federal custody. (Doc. 85.) The government has filed a motion to dismiss Brock's motion without an evidentiary hearing. (Doc. 98.) Although Brock filed his § 2255 motion *pro se*, counsel subsequently appeared on his behalf and has filed a brief in support of the motion as well as a response to the motion to dismiss. (Docs. 94 & 104.) For reasons discussed below, the Court finds that the government's motion is due to be granted.

**Background**

   **Procedural Background**

On November 25, 2003, Petitioner Carl Brock was charged in a nine-count indictment with conspiracy to possess with intent to distribute "a Schedule I controlled substance, to-wit: approximately 100 tablets of methylenedioxymethamphetamine (MDMA), commonly known as ecstasy" in

violation of 21 U.S.C. § 846.¹  Seven of the remaining counts were substantive counts, charging possession of various amounts of "methylenedioxymethamphetamine (MDMA), commonly known as ecstasy" in violation of 21 U.S.C. § 841(a)(1).  The final count charged Brock with using, carrying or possessing a firearm during and in relation to a drug trafficking offense.  Attorney Al Pennington was appointed to represent Brock. Upon motion of defense counsel outlining Brock's history of mental health issues, the Court ordered a psychiatric exam.  After the exam was completed, the Court held a competency hearing and concluded that Brock was found competent to stand trial.

On April 28, 2004, Brock entered into a written plea agreement with the government and pled guilty to three counts of the indictment.  The plea agreement described those counts as follows:

> [C]ounts one, four and five of the indictment, which charge violations of Title 21, United States Code Sections 846, 841(a)(1) and Title 18, United States Code Section 924(c)(1), respectively as follows: conspiracy to possess with intent to distribute **3,4-methylenedioxymethamphetamine (MDMA), commonly known as ecstasy,** a Schedule I controlled substance, possession with intent to distribute **3,4-methylenedioxymethamphetamine (MDMA), commonly known as ecstasy**, a Schedule I controlled substance, and carrying a firearm in connection with a drug trafficking felony.

(Plea Agreement ¶ 2, Doc. 26, emphasis added.)  After obtaining two continuances of the sentencing hearing, Brock filed a motion to withdraw his guilty plea and a third motion to continue sentencing.  After a hearing, the Court denied both motions and sentenced Brock to terms of imprisonment of 144 months as to Counts One and

---

¹ Brock was initially arrested on a complaint that charged him with conspiracy to possess and possession with intent to distribute "methylenedioxymethamphetamine (MDMA), (Ecstasy)."  (Doc. 1.)

2

Four (concurrent) and 60 months as to Count 5 (consecutive) and a supervised release term of 3 years as to each count (concurrent). (Jdgt., Doc. 47.) The remaining counts were dismissed.

Brock filed a notice of appeal, and the Federal Public Defender was appointed to represent him on appeal. Appellate counsel subsequently filed a motion to withdraw the appeal. That motion was granted by order of the United States Court of Appeals for the Eleventh Circuit issued as mandate on April 15, 2005. (Doc. 75.)

On January 21, 2011, Brock filed a § 2255 motion *pro se*. On July 28, 2011, however, Brock filed a motion to withdraw his § 2255 motion. (Doc. 77.) Brock stated that he "did not provide the correct arguments not the correct case law to support the relief requested he requests" and that he intended to "do[ ] more research and cross-referencing." (*Id.* 2.) The motion to withdraw was granted on August 8, 2011. (Doc. 77.) According to correspondence between Brock and the Clerk of Court from January 10, 2012 to May 15, 2012, copies of documents from the court file (including the indictment) were mailed to Brock three times. (Docs. 81-84.) Brock received the documents in mid-May 2012. (Petr's pro se Brf. xii, Doc. 85.) Brock deposited the instant § 2255 motion in his institution's mail system on June 25, 2013. On September 12, 2013, counsel entered a notice of appearance on Petitioner's behalf filed a brief in support of the § 2255 motion.

**Petitioner's Post-Conviction Research & Discovery[2]**

---

[2] The "facts" in this section are derived from Brock's *pro se* brief in support of his § 2255 motion. For the purpose of this order, those facts are uncontradicted and presumed to be true.

3

Since Brock arrived in Federal prison in early 2005, he has educated himself about the "American judicial and legislative systems" and has done his best "to keep himself up to date with Eleventh Circuit and Supreme Court cases." (*Id.* xi.) In September 2011, he read a recent Eleventh Circuit decision that led to his discovery of *United States v. Huff,* 512 F.2d 66 (5th 1975). In *Huff* one count of the indictment misdescribed the controlled substance as "methylenedioxy amphetamine," while the other count correctly described the substance as "3,4 methylenedioxy amphetamine." At trial, the judge orally corrected the defective count for the jury to read "3,4 methylenedioxy amphetamine," and the defendant was convicted on both counts. On appeal, the Fifth Circuit reversed Huff's conviction on the defective count because the two substances were not the same, the substance charged in the defective count was not listed in schedule of controlled substances, and "the chemical and legal definition of the substances [charge] is itself technical and requires precision." *Id.* at 69.

After reading *Huff*, Brock realized that he needed to find out whether "MDMA" or "ecstasy" was a Schedule I controlled substance. (*Id.*) In late 2011, Brock obtained a list of controlled substances published by the DEA in the Federal Register. (*Id.*) "Ecstasy" was not on the list, but "3,4-methylenedioxymethamphetamine (MDMA)" was.[3] At that point, Brock realized that this "might be a situation like the *Huff* case" and tried to get his family to locate his legal papers, which were in storage. (*Id.*) Brock also contacted the Clerk of Court and requested copies of relevant pleadings, which he did not receive until

---

[3] *See* 21 C.F.R. § 1308.11(d)(11).

about mid-May 2012. (*Id.*) He "diligently researched" case law for several months for any legal opinions regarding the differences in "methylenedioxymethamphetamine" and "3,4-methylenedioxymethamphetamine" but could not find any. (*Id.* xiii.) From October 2012 to December 2012 Brock and his family "diligently searched for an expert in the chemistry field" who could answer questions and provide testimony regarding the chemical substance "methylenedioxymethamphetamine." (*Id.*)

In January 2013, Brock obtained scientific evidence from a chemist, Dr. Edward Brown, regarding the difference between the substance charged in the complaint and in the indictment, "methylenedioxymethamphetamine," and the substance charged in the plea agreement, "3, 4-methylenedioxymethamphetamine." According to Dr. Brown, the former "describes a class of compounds" while the latter "describes one specific chemical substance" within that class of compounds. (Brown Aff., Petr.'s Brf., Ex. D, Doc. 85.) Dr. Brown also points out that only "3, 4-methylenedioxymethamphetamine" is listed as a Schedule I controlled substance. (*Id.*)

**Petitioner's Claims & the Government's Motion to Dismiss**

In the § 2255 motion filed *pro se* and in the brief filed by counsel, Brock specifically enumerates two claims for relief: "actual innocence" and "lack of personal and subject matter jurisdiction." However, Brock's *pro se* brief asserts a third claim overlooked by both the government and his own counsel—ineffective assistance of counsel. All claims arise from the same fundamental assertion of error, that is, that Brock was charged with and convicted of a "nonoffense" due to the

omission of "3, 4-" from the description of the substance charged in the criminal complaint and in the subsequent indictment. Brock argues that this defect in the complaint resulted in a lack of personal jurisdiction and that the defect in the indictment rendered him factually innocent and deprived the Court of subject matter jurisdiction. Finally, Brock alleges that trial counsel rendered ineffective assistance of counsel at the guilty plea by advising him to plead guilty to a "nonoffense" and that appellate counsel rendered ineffective assistance by advising him to withdraw his appeal.

The government moves to dismiss all claims because: (1) the claims are barred by § 2255's one-year limitations period because the motion was not filed within one year after the conviction became final; (2) the claims are procedurally defaulted; or (3) the claims have no merit. In response, Brock argues the limitations period began to run when he discovered evidence necessary to his claim, not on the date of conviction. Alternatively, Brock argues that the limitations period is not applicable to claims of actual innocence or jurisdictional error. Below, the Court describes § 2255's parameters before addressing these issues.

**Legal Analysis**

    **Section 2255**

Collateral review of a conviction and sentence is available to a federal prisoner through 28 U.S.C. § 2255. The statute was enacted to provide a remedy "exactly commensurate" with that previously available through habeas. *United*

*States v. Addonozio*, 442 U.S. 178, 185 (1979).[4] "The statute states four grounds upon which such relief may be claimed: (1) 'that the sentence was imposed in violation of the Constitution or laws of the United States,' (2) 'that the court was without jurisdiction to impose such sentence,' (3) 'that the sentence was in excess of the maximum authorized by law,' and (4) that the sentence 'is otherwise subject to collateral attack.'" *Hill v. United States*, 368 U.S. 424, 426-27 (1962) (quoting 28 U.S.C. § 2255).

Section 2255 was amended, effective April 24, 1996, by the Anti-Terrorism and Effective Death Penalty Act (AEDPA), Pub. L. 104-132, 112 Stat. 1214 (codified as amended at 28 U.S.C. § 2241 *et seq.*) to include a one-year limitations period for filing a collateral attack. Congress's "overriding purpose" in enacting AEDPA's limitations period was "to achieve finality in criminal cases, both federal and state." *Murphy v. United States*, 634 F.3d 1303, 1309 (11th Cir. 2011) (internal citations and quotations omitted). Pursuant to § 2255(f), the one-year limitations period runs from the latest of the following dates:

> **(1)** the date on which the judgment of conviction becomes final;
>
> **(2)** the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> **(3)** the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

---

[4] The enactment of § 2255 allowed the sentencing court (rather than the court in the jurisdiction of confinement) to hear the petition. *Id.*

7

>**(4)** the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

**Brock's Claims are Time-Barred**

In response to the government's argument that the motion is untimely because it was not filed within one year of the date the judgment of conviction became final, as provided in subsection (f)(1), Brock points to a different accrual date--"the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence"--set forth in subsection (f)(4). The Supreme Court has said that "[due] diligence can be shown by prompt action on the part of the petitioner as soon as he is in a position to realize" that he should act. *Johnson v. United States*, 544 U.S. 295, 308 (2005). "The important thing is to identify a particular time when. . . diligence is in order." *Id.* "[T]he one-year period is triggered by a date that is not necessarily related to a petitioner's actual efforts or actual discovery of the relevant facts." *Aron v. United States*, 291 F.3d 708, 711 (11th Cir. 2002). It "begins to run when the facts *could have been* discovered by the exercise of due diligence, not when they were *actually* discovered." *Id.*

Brock argues that he filed his motion "within one year of discovering the factual predicate of his claims through the exercise of his uncontroverted due diligence." (Petr.'s Reply Brf. 4, Doc. 104.) Brock's reply brief does not specifically identify the "factual predicate" that was discovered by his allegedly "uncontroverted due diligence." The Court presumes that Brock is referring to the testimony of his chemist, obtained in early 2013, which confirmed that the controlled substance

alleged in the indictment, "methylenedioxymethamphetamine," was not identical to any chemical on the list of controlled substances and, more specifically, was not the same as the listed chemical that was named in the plea agreement, "3, 4-methylenedioxymethamphetamine." Brock clearly filed his motion within one year of obtaining this information.

The question, however, is whether Brock exercised due diligence in the process that resulted in this discovery. If he did, the limitations period began to run when he obtained the chemist's opinion and discovered that the chemical identified in the indictment was not a Schedule I substance. If he did not, then the limitations period began to run when he should have made this discovery. Regarding his "due diligence," Brock asserts that he "began a continuous and ever-evolving study of religion, politics, philosophy and the law" from the time he arrived at prison in 2005 and that he "did his best to keep himself up to date with Eleventh Circuit and Supreme Court cases." (Petr.'s Brf., Doc. 85, xi.) In 2011, he discovered *United States v. Huff,* 512 F.2d 66 (1975), which is the lynchpin of his § 2255 motion. In Brock's view, he has exercised due diligence since he arrived in prison 2005, with his ongoing self-directed legal research through which he discovered *Huff* in 2011, which led him to obtain copies of the indictment and other relevant pleadings in 2012. Upon receipt he discovered the misidentification of the controlled substance in the indictment, which set him on a quest for a chemist to determine whether the chemical listed in the indictment was a controlled substance. He filed the instant motion less than six months after obtaining the chemist's report.

Assuming, *arguendo*, that the report provided the "facts" that support the claim, that does not resolve the limitations issue. The statute requires that the petitioner exercise due diligence to discover those facts and, if he did not, the limitations period begins to run when the facts *could have been discovered*. *Aron*, 291 F.3d at 711. The problem with Brock's argument is the starting point for due diligence. His years of legal research and discovery of the *Huff* case are red herrings. Brock argues that this research caused him to review his indictment to determine if this was a situation like *Huff*, but a *pro se* petitioner's belated discovery of an existing legal theory cannot be the starting point for due diligence. *Cf. Johnson*, 544 U.S. at 311 ("we have never accepted *pro se* representation alone or procedural ignorance as an excuse for prolonged inattention when a statute's clear policy calls for promptness"); *Owens v. Boyd*, 235 F.3d 356 (7th Cir, 2000) (discovery of a new court legal opinion does not trigger the limitations period). Otherwise, a petitioner might take many years to stumble across that all-important case, thereby "maximizing the time" that the underlying judgment is open to question and, by so doing, "allowing th[e] kind of delay that would thwart one of AEDPA's principal purposes. *Johnson*, 544 U.S. at 308.

The question, then, is "how long a duly diligent prisoner would take" to review his case and consult the law. If years of self-taught legal research is not due diligence, what does due diligence entail? The answer is found in § 2255(f)(1), which provides a prisoner attacking his conviction with a one-year window from the date judgment becomes final to identify the legal and factual grounds for a collateral attack. 28 U.S.C. § 2255(f)(1). At the time Brock's judgment became final in 2006,

all the information necessary to trigger due diligence was available to him--the *Huff* case, which was decided in 1975, the indictment and other documents from his court file, and the applicable criminal statutes. Subsection (f)(1) provides all prisoners with fair warning that they must diligently pursue and file their claims within one year after final judgment.

In sum, Brock's claims are time barred because his motion was not filed within one year of the date his conviction became final as required by 28 U.S.C. § 2255(f)(1). Brock cannot rely on § 2255(f)(4) for an alternative date of accrual because § 2255(f)(1) implicitly requires a prisoner to exercise due diligence to discover and assert any and all claims that could be made within one year of the entry of judgment.[5]

**Actual Innocence Exception Does Not Apply**

In *McQuiggin v. Perkins*, __ U.S. __, 133 S. Ct. 1924 (2013), the Supreme Court held that a petitioner's "actual innocence" provides a gateway to assert an otherwise time-barred claim. This exception is an outgrowth of Supreme Court jurisprudence regarding procedural default. In *Murray v. Carrier*, 477 U.S. 478 (1986), the Court held that the rule of procedural default, i.e., that constitutional claims not raised on direct appeal cannot be considered on habeas review, must yield when failure to consider the claim would result in a fundamental miscarriage of justice. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ

---

[5] To hold otherwise would undermine § 2255(f)(1)'s limitations period. A prisoner would have an open-ended amount of time to research, as long as he filed the § 2255 motion within one year of recognizing that claim.

even in the absence of a showing of cause for the procedural default." *Id.* 496. The contours of an actual innocence claim are narrowly defined. *McKay v. United States*, 657 F.3d 1190 (11th Cir. 2011) ("as it has been repeatedly emphasized, the actual innocence exception is a *narrow* exception"). "[T]he miscarriage of justice exception is concerned with actual as compared to legal innocence." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (internal citations and quotations omitted). The Supreme Court has sought to ensure that the exception "would remain 'rare' and would only be applied in the 'extraordinary case,' while at the same time ensuring that the exception would extend relief to those who were truly deserving." *Schlup v. Delo*, 513 U.S. 298, 321 (1995).

Because of the narrow scope of the exception, Brock must demonstrate that he is ""factually innocent rather than legally innocent." *San Martin v. McNeil*, 633 F.3d 1257, 1268 (11th Cir. 2011). This he cannot do for two reasons. First, his claim is one of legal innocence. "Whether an indictment sufficiently alleges a statutorily proscribed offense is a question of law. *United States v. Pease*, 240 F.3d 938, 942 (11th Cir. 2001). Second, even it were an issue of fact, he cannot demonstrate factual innocence. In *Bousley v. United States*, 523 U.S. 614 (1998), the Supreme Court explained that factual innocence is not "mere legal insufficiency. In other words, the Government is not limited to the existing record to rebut any showing that petitioner might make, Rather, . . . the government is permitted to present any admissible evidence of petitioner's guilt." *Id.* 623-24. In this case, the record itself precludes any claim of "factual innocence." Brock argues that he can present new evidence of his innocence—expert testimony that

"methylenedioxymethamphetamine," the controlled substance alleged in the indictment is not a chemical compound listed in the indictment. But this evidence does not prove that he is factually innocent of violating 21 U.S.C. § 846, 21 U.S.C. § 841(a)(1), or 18 U.S.C. § 924(c)(1). Brock has admitted in his plea agreement that he conspired to possess with intent to distribute and possessed with intent to distribute "3, 4-methylenedioxymethamphetamine" and that he used a firearm during and in relation to the latter offense. In conclusion, actual innocence does not provide a gateway for Brock because his claim is one of legal innocence and, even if it were not, he is not factually innocent.

**No Exception for Jurisdictional Claims**

Brock argues that the limitations period does not apply because his claim is one of jurisdictional error and lack of jurisdiction is a fundamental defect.[6] He points out that the doctrine of procedural default does not apply to jurisdictional claims and, therefore, argues that the limitations period also does not apply. In *Barreto-Barreto v. United States*, 551 F.3d 95 (1st Cir. 2008), the First Circuit was faced with a similar argument. The petitioners asserted that the sentencing court

---

[6] The Court questions whether the indictment's failure to correctly identify the controlled substance actually is a jurisdictional defect. Not all defects in the indictment are jurisdictional. The Eleventh Circuit has made a distinction between indictment omissions (nonjurisdictional) and the affirmative allegation of specific conduct that is not proscribed by the charging statute (jurisdictional). *United States v. Peter*, 310 F.3d 709 , 714 (11th Cir. 2002). "Both before and after *Apprendi*, in any § 841 case, an indictment charging that a defendant violated § 841 properly charges a complete federal crime *without reference to either drug type or quantity.*" *United States v. Sanchez*, 269 F.3d 1250, 1275 (2001) (en banc)(emphasis added), *abrogated on other grounds*, *United States v. Duncan*, 400 F.3d 1297 (11th Cir. 2005). Brock argues that the indictment charged him with conduct not proscribed by statute because it charged him with possession of a substance not listed as a controlled substance.

did not have subject matter jurisdiction because the informations to which they pled guilty did not actually charge a crime. Like Brock, the *Barreto-Barreto* petitioners argued that jurisdictional challenges are not subject to § 2255's one-year limitations period. The court squarely rejected that argument, stating:

> Section 2255 states that claims which allege "the court was without jurisdiction to impose such sentence" may be raised in a § 2255 motion seeking to vacate the sentence and that "[a] 1-year period of limitation shall apply to a motion under this section." 28 U.S.C. § 2255(a), (f). Nothing in the language of § 2255 suggests that jurisdictional challenges are exempt from the one-year limitations period. To the contrary, 2255(f) explicitly states that the limitations period "shall apply" to all motions made under § 2255.

*Id.* at 100; *accord United States v. Card*, 534 Fed. App'x 765 (10th Cir. 2013) (denying COA and rejecting petitioner's argument that jurisdictional challenge was not subject to § 2255's limitation period); *United States v. Scruggs*, 691 F.3d 660, 667 (5th Cir. 2012) (movant was not excused from including claim in his § 2255 motion because "the statutory limitations on § 2255 review apply to jurisdictional claims"); *Williams v. United States*, 383 Fed. App'x 927 (11th Cir. 2010) (following *Barreto-Barreto* and holding that § 2255's 1-year limit "applies even though [petitioner's] new claim is an attack on the district court's jurisdiction). Based on the foregoing authorities, the Court finds no merit is Brock's claim that jurisdictional error is exempt from § 2255's limitations period.

**Conclusion**

The motion is time-barred because it was not filed within one year of any of the accrual dates set forth in 28 U.S.C. § 2255(f), and there are no applicable exceptions that would relieve Brock of this requirement. Accordingly, the government's motion to dismiss is **GRANTED**.

**Certificate of Appealability Denied**

Rule 11 of the Federal Rules Governing Section 2255 Proceedings requires that the district court issue or deny a certificate of appealability when entering a final order on a § 2255 motion. When a court denies a motion "on procedural grounds without reaching the merits of any constitutional claims, . . . a petitioner will be granted a certificate of appealability only if [he] makes both a substantial showing that he had a valid claim of the denial of a constitutional right, and a substantial showing that the procedural ruling is wrong," *Jackson v. Crosby*, 437 F.3d 1290, 1295 (11th Cir. 2006) (internal citations and quotations omitted) (*citing Slack v. McDaniel*, 529 U.S. 473, 484,(2000) ). A "substantial showing means" that the issues—both substantive and procedural—are debatable among jurists of reason. *Id.* In this case, there is no need to consider the constitutional issue because no jurist of reason could find that this § 2255 motion was timely filed. Therefore, the Certificate of Appealability is **DENIED**.

**DONE** and **ORDERED** this the 17th day of March, 2014.

> **s/***Charles R. Butler, Jr.*
> **Senior United States District Judge**